RECORD NO. 14-1040

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

TIMOTHY OLSON

*Plaintiff-Appellant*

v.

MIDLAND FUNDING, LLC;
MIDLAND CREDIT MANAGEMENT, INCORPORATED;
LYONS DOUGHTY & VELDHUIS, P.C.

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION

_____

**BRIEF OF APPELLEES**

_____

James P. Ulwick
Amy E. Askew
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Tel.: (410) 752-6030
julwick@kg-law.com
aaskew@kg-law.com

Counsel for Appellees
Midland Funding, LLC and
Midland Credit Management, Inc.

Ronald S. Canter
Law Offices of Ronald S. Canter, LLC
200A Monroe Street
Suite 104
Rockville, Maryland 20850
Tel: (301) 770-7490
rcanter@roncanterllc.com

Counsel for Appellee
Lyons Doughty & Veldhuis, P.C.

13291/0/01556493.DOCXv1

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1040          Caption: Timothy Olson v. Midland Funding, LLC, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Midland Funding, LLC
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:
      Encore Capital Group, Inc., Midland Credit Management, Inc., Midland Porfolio Servince, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☑ YES ☐ NO
      If yes, identify all such owners:
      Encore Capital Group, Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____1/23/14_____

Counsel for: Midland Funding, LLC _____

## CERTIFICATE OF SERVICE
**********************************

I certify that on _____1/23/14_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____          _____1/23/14_____
        (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1040 _____ Caption: Timothy Olson v. Midland Funding LLC, et al. _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

Midland Credit Management, Inc. _____
(name of party/amicus)

_____

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☑YES ☐NO

2.   Does party/amicus have any parent corporations?                    ☑YES ☐NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:
     Encore Capital Group, Inc.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                       ☑YES ☐NO
     If yes, identify all such owners:
     Encore Capital Group, Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _Amy E. Askew_          Date: _____1/23/14_____

Counsel for: _Midland Credit Management, Inc._

## CERTIFICATE OF SERVICE
*************************

I certify that on _____1/23/14_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_Amy E. Askew_                        _____1/23/14_____
(signature)                                   (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1040        Caption: Timothy Olson v. Midland Funding, LLC, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Lyons Doughty & Veldhuis, P.C.
(name of party/amicus)

_____

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Ronald S. Canter          Date:    01/16/2014

Counsel for: Lyons Doughty & Veldhuis, P.C.

## CERTIFICATE OF SERVICE
**************************

I certify that on        01/16/2014        the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

E. David Hoskins, Esq.                    James P. Ulwick, Esq.
Max F. Brauer, Esq.                       Amy E. Askew, Esq.
The Law Offices of E. David Hoskins       Kramon & Graham, P.A.
16 E. Lombard Street, Suite 400           1 South Street, Suite 2600
Baltimore, Maryland 21202                 Baltimore, Maryland 21202
Attorneys for Appellant                   Attorneys for Appellees Midland Funding, LLC and
                                          Midland Credit Management, Inc.

/s/ Ronald S. Canter, Esq.                                01/16/2014
        (signature)                                          (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

ISSUES PRESENTED FOR REVIEW ................................................ 1

COUNTER-STATEMENT OF THE CASE ....................................... 1

SUMMARY OF THE ARGUMENT ................................................. 7

ARGUMENT ................................................................................... 10

    I.      Debt Collection Law ........................................................... 10

          A.    FDCPA. ..................................................................... 10

          B.    MCDCA. ................................................................... 11

          C.    MCPA. ...................................................................... 12

    II.    The District Court Properly Granted The Midland Parties' And The Lyons Firm's Motions To Dismiss ............................... 13

          A.    The Amended Complaint fails to state a claim under the FDCPA. ................................................................... 13

                1.    Olson's claims under the FDCPA are time-barred ............ 13

                        i.    Filing of interest worksheets ........................................ 14

                        ii.    Commencement of state debt collection action ........ 15

                2.    MCM did not violate § 1692c(a)(2) of the FDCPA when it sent Olson the Privacy Notice. ........................................ 22

B.    The Amended Complaint fails to state a claim under the MCDCA. .................................................................. 27

C.    The Amended Complaint fails to state a claim under the MCPA. .................................................................. 32

III.    In The Alternative, This Court May Affirm The District Court's Judgment On Any Other Ground Supported By The Record............. 33

A.    An alleged violation of a state procedural rule does not give rise to a claim under the FDCPA...................................... 33

B.    Olson's theory that Midland engaged in "scattershot litigation" is not a viable theory. ............................... 37

C.    The allegation that the Midland Parties or the Lyons Firm falsely represented that the sale of Olson's debt to Midland "was subject to representation or warranty as to collectibility" does not give rise to a claim under the FDCPA. .................................................................. 38

D.    The allegation that the Midland Parties and the Lyons Firm filed the Debt Collection Complaint without any meaningful attorney involvement does not give rise to a claim under the FDCPA. .......................................................... 40

E.    The Amended Complaint fails to state a claim under § 1692f of the FDCPA................................................ 41

CONCLUSION ........................................................................ 42

STATEMENT WITH RESPECT TO ORAL ARGUMENT ................................. 43

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)................ 44

CERTIFICATE OF SERVICE................................................................ 45

ADDENDUM........................................................................ A-1

## TABLE OF AUTHORITIES

### Cases

*Akalwadi v Risk Mgmt. Alternatives, Inc.*,
    336 F. Supp. 2d 492 (D. Md. 2004) ............................................................ 10, 13

*Alaan v. Asset Acceptance, LLC*,
    No. 10-328, 2011 WL 3475378 (S.D. Cal. Aug. 8, 2011) ................................. 38

*Bandy v. Midland Funding, LLC*,
    No. 12-491, 2013 WL 210730 (S.D. Ala. Jan. 18, 2013) ................................. 38

*Bey v. Shapiro Brown & Alt, LLP*,
    No. 13-1562-PWG, 2014 WL 661586 (D. Md. Feb. 20, 2014) ........................ 21

*Bihn v. Fifth Third Mortg. Co.*,
    No. 13-00057, 2013 WL 5657598 (S.D. Ohio Oct. 16, 2013) .......................... 21

*Bradshaw v. Hilco Receivables, LLC*,
    765 F. Supp. 2d 719 (D. Md. 2011) .............................................................. 34

*Carlson v. First Revenue Assurance*,
    359 F.3d 1015 (8th Cir. 2004) ...................................................................... 34

*Clark v. Main Street Acquisition Corp.*,
    No. 12-408, 2013 WL 2295879 (S.D. Ohio May 24, 2013),
    *aff'd* No. 13-3763, 2014 WL 274469 (6th Cir. Jan. 27, 2014) ......................... 36

*Clark v. Unifund CCR Partners*,
    No. 07-266, 2007 WL 1258113 (W.D. Pa. Apr. 30, 2007) ............................... 41

*Deere v. Javitch, Block & Rathbone, LLP*,
    413 F. Supp. 2d 886 (S.D. Ohio 2006) ..................................................... 38, 41

*Derisme v. Hunt Leibert Jacobson P.C.*,
    880 F. Supp. 2d 339 (D. Conn. 2012) ........................................................... 23

*Drager v. PLIVA USA, Inc.*,
   741 F.3d 470 (4th Cir. 2014) ........................................................... 33

*Estep v. Naley Deas Kochalski*, LLC,
   No. 13-3635, 2014 WL 185391 (6th Cir. Jan. 16, 2014) ................... 23

*Fontell v. Hasset*,
   870 F. Supp. 2d 395 (D. Md. 2012) ........................................... 19, 21

*Foti v. NCO Fin. Sys.*,
   424 F. Supp. 2d 643 (S.D.N.Y. 2006) ............................................. 41

*Gburek v. Litton Loan Servicing, LP*,
   614 F.3d 380 (7th Cir. 2010) .......................................................... 23

*Grden v. Leikin Ingber & Winters PC*,
   643 F.3d 169 (6th Cir. 2011) .......................................................... 24

*Harvey v. Great Seneca Fin. Corp.*,
   453 F.3d 324 (6th Cir. 2006) ..................................................... 11, 38

*Hernandez v. Midland Credit Management, Inc.*,
   No. 04-7844, 2006 WL 695451 (N.D. Ill. Mar. 14, 2006) ............... 24

*Hickman v. Alpine Asset Mgmt. Group, LLC*,
   No. 11-1236, 2012 WL 4062694 (W.D. Mo. Sept. 14, 2012) ...... 38, 41

*Hill v. Midland Funding, LLC*,
   No. 12-2397-CCB, 2013 WL 1645553 (D. Md. Apr. 16, 2013) ... 34, 37

*In re Creditrust Corp.*,
   283 B.R. 826 (Bankr. D. Md. 2002) ................................................ 10

*Kamps v. Midland Funding, LLC*,
   No. 12-3799, 2013 WL 622505 (N.D. Ala. Feb. 19, 2013) ............... 32

*Kouabo v. Chevy Chase Bank, F.S.B.*,
   336 F. Supp. 2d 471 (D. Md. 2004) ................................................ 29

*Kuria v. Palisades Acquisition XVI, LLC,*
    752 F. Supp. 2d 1293 (N.D. Ga. 2010) ................................................ 31

*Lembach v. Bierman,*
    Nos. 12-1723, 12-1746, 2013 WL 2501752 (4th Cir. June 12, 2013) ........... 2, 13

*Lipa v. Asset Acceptance, LLC,*
    572 F. Supp. 2d 841 (E.D. Mich. 2008) ............................................... 36

*Martin v. Sessoms & Rogers, P.A.,*
    No. 09-480, 2010 WL 3200015 (E.D.N.C. Aug. 12, 2010) ........................ 19, 21

*Mello v. Great Seneca Financial Corp.,*
    526 F. Supp. 2d 1020 (C.D. Cal. 2007) ............................................... 31

*Nash v. Green Tree Servicing, LLC,*
    No. 12-278, 2013 WL 1867357 (E.D. Va. May 2, 2013) ........................... 24, 27

*Nickoloff v. Wolpoff & Abramson, LLP,*
    511 F. Supp. 2d 1043 (C.D. Cal. 2007) ............................................... 38

*Nodeen v. Sigurdsson,*
    408 Md. 167 (2009) ..................................................................... 17

*Pollokoff v. Maryland Nat'l Bank,*
    288 Md. 485 (1980) ..................................................................... 30

*Powell v. Palisades Acquisition XVI, LLC,*
    No. 13-0219-RDB, 2014 WL 334814 (D. Md. Jan. 29, 2014) ....................... 24

*Richardson v. Midland Funding, LLC,*
    No. CCB, 13-1356, 2013 WL 6719110 (D. Md. Dec. 18, 2013) .............. passim

*Robinson v. TSYS Total Debt Mgmt., Inc.,*
    447 F. Supp. 2d 502 (D. Md. 2006) ................................................... 10

*Schaffhauser v. Citibank (S.D.), N.A.,*
    No. 08-2275, 2009 WL 2400254 (3d Cir. 2009) ..................................... 21

*Simard v. LVNV Funding, LLC,*
  No. 10-11009, 2011 WL 4543956 (D. Mass. Sept. 28, 2011) ........................... 21

*Spencer v. Henderson-Webb, Inc.,*
  81 F. Supp. 2d 582 (D. Md. 1999) ........................................................ 12, 29, 32

*Stewart v. Bierman,*
  859 F. Supp. 2d 754 (D. Md. 2012), *aff'd, Lembach v. Bierman,*
  No. 12-1723, 2013 WL 2501752 (4th Cir. June 12, 2013) ................... 12, 40, 41

*Stricklin v. Jefferson Capital Systems, LLC,*
  No. 11-201, 2011 WL 5325735 (S.D. Ill. Nov. 3, 2011) .................................... 24

*Suessman v. Lamone,*
  383 Md. 697 (2004) ........................................................................................... 30

*Tucker v. Mann Bracken, LLC,*
  No. 08-1677, 2009 WL 151669 (M.D. Pa. 2009) ........................................ 19, 20

*Wallace v. Manley Deas Kochalski LLC,*
  No. 13-00031, 2013 WL 3338687 (W.D. Ky. July 2, 2013) .............................. 40

*Winemiller v. Worldwide Asset Purchasing, LLC,*
  No. 09-2487-RDB, 2011 WL 1457749 (D. Md. Apr. 15, 2011) ....................... 15

## Statutes

15 U.S.C. § 1692(e) .............................................................................................. 10
15 U.S.C. § 1692e(10) ......................................................................... 14, 33, 37, 38
15 U.S.C. § 1692e(2)(A) ....................................................................................... 33
15 U.S.C. § 1692f ......................................................................................... passim
15 U.S.C. § 1692f(1) ............................................................................................. 33
15 U.S.C. § 1692k(d) ............................................................................................ 13
15 U.S.C. § 6803(a) .............................................................................................. 25
15 U.S.C. §§ 1692, *et seq.* ................................................................................. 1, 2
15 U.S.C. §§ 6801, *et seq.* .................................................................................. 25
Md. Code Ann., Com. Law § 13-102(a)(1) ......................................................... 12
Md. Code Ann., Com. Law § 13-103 ................................................................... 12

Md. Code Ann., Com. Law § 13-104(1) ................................................................ 2
Md. Code Ann., Com. Law § 13-301(14)(iii) ...................................................... 12
Md. Code Ann., Com. Law § 14-202 ............................................................ 12, 28
Md. Code Ann., Com. Law § 14-202(8) .............................................................. 12
Md. Code Ann., Com. Law §§ 13-101, *et seq* .................................................. 1, 2
Md. Code Ann., Com. Law §§ 14-201, *et seq* .................................................. 1, 2
Md. Code Ann., Cts & Jud. Proc. § 6-201(a) ...................................................... 17

## **Rules**

Md. Rule 3-121(a) ............................................................................................... 16
Md. Rule 3-306 ......................................................................................... 33, 34, 36

## ISSUES PRESENTED FOR REVIEW

I.     Did the district court correctly determine that the majority of the claims asserted under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, are time-barred?

II.     Did the district court correctly determine that a stand-alone privacy notice, sent without any additional communications and containing no reference to the collection of a consumer debt, is not a "communication in the connection with the collection of any debt" under § 1692c(a)(2) of the Fair Debt Collection Practices Act?

III.     Did the district court correctly determine that the Amended Complaint fails to state claims under the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201, *et seq.*, and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101, *et seq.*?

IV.     In the alternative, should the district court's judgment be affirmed because the Amended Complaint fails to state claims under the Fair Debt Collection Practices Act?

## COUNTER-STATEMENT OF THE CASE

Appellant Timothy Olson ("Olson") filed this lawsuit on May 20, 2013, against Appellees Midland Funding, LLC ("Midland"), Midland Credit Management, Inc. ("MCM") (collectively, "the Midland Parties"), and Lyons,

Doughty & Veldhius, P.C. (the "Lyons Firm") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, the Maryland Consumer Debt Collection Act  ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201, *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101, *et seq.*  In response to the Midland Parties' and the Lyons Firm's respective motions to dismiss, Olson filed an amended complaint and an opposition to the dispositive motions on July 29, 2013.[1]

Olson's Amended Complaint is based on the following allegations:[2]

In his Amended Complaint, Olson alleges that on or about December 15, 2010, Midland, through its counsel, the Lyons Firm, filed a complaint and a demand for judgment on an affidavit against Olson in the District Court of Maryland for St. Mary's County (the "Debt Collection Complaint"), the county in

---

[1]    In the Amended Complaint, Olson asserts the MCPA claim against the Midland Parties only.  Indeed, as argued by the Lyons Firm in its motion to dismiss the original complaint, the MCPA does not apply to lawyer services.  *See* Md. Code Ann., Com. Law § 13-104(1).  *See also Lembach v. Bierman*, Nos. 12-1723, 12-1746, 2013 WL 2501752, at *5 (4th Cir. June 12, 2013) ("Given the plain language of the act exempting attorneys and considering the fact that Maryland courts have applied the exemption broadly . . . [a]ttorneys are clearly not within the scope of the Act.").

[2]    The Midland Parties and the Lyons Firm, solely for the purposes of this appeal, assume the truth of the well-pleaded factual allegations in the Amended Complaint.  They reserve the right to dispute those factual allegations should the district court's judgment dismissing the Amended Complaint be reversed on any claim asserted by Olson.

which Olson lived at the time. JA-19 at ¶ 47; JA-23 to JA-24 at ¶ 63. Subsequent to the filing of the Debt Collection Complaint, but before service of process, Olson moved from St. Mary's County to Baltimore City. JA-23 to JA-24 at ¶ 63 Olson admits he became aware of the lawsuit in December 2010. JA-24 at ¶ 64.

After the Debt Collection Complaint was filed, Olson corresponded with the Lyons Firm regarding the collection lawsuit both by letter and by telephone, requesting, among other things, that that the Debt Collection Complaint be served at his new address in Baltimore City. *Id.* at ¶¶ 64, 66, 68, 70. On or about March 9, 2011, Olson sent a letter to the Lyons Firm, claiming to be experienced with the judicial process and noting his intention to fully defend against the collection action:

> [B]e advised that I am not intimidated by lawyers, collection agents or the legal system in general. I have every intention of filing claims and motions of my own if your client chooses to escalate the situation. I have navigated the justice system successfully in the past with my intellect, ability to research, diligence and faith in justice.

JA-52.

The Lyons Firm filed updated interest worksheets in the District Court for St. Mary's County on March 28, 2011 and November 21, 2011. JA-24 at ¶¶ 67, 69. A writ of summons was issued on January 26, 2012, and the District Court for St. Mary's County set a trial date of March 19, 2012 in St. Mary's County. JA-75. The Lyons Firm served a co-resident of Olson's home at Olson's Baltimore City

address with the Debt Collection Complaint and summons on February 17, 2012. *See* JA-76. On March 19, 2012, the Lyons Firm filed a third updated interest worksheet. JA-25 at ¶ 72. On the same day, the trial court denied Midland's request for an affidavit judgment and postponed the trial. JA-25 at ¶ 71. *See also* JA-77.

On April 4, 2012, Olson requested that the venue be changed to Baltimore City. JA-25 at ¶ 73. On behalf of Midland, the Lyons Firm consented to the request and the case was transferred to the District Court of Maryland for Baltimore City. *Id.* After the case was transferred, Olson moved to Calvert County, Maryland. *Id.* at ¶ 74. A trial date was set for August 22, 2012 in Baltimore City. JA-25 to JA-26 at ¶ 75.

Olson, acting *pro se*, appeared in court on the date of trial. *Id.* At the time Olson appeared, the affidavit that originally was filed was no longer in the case. Over Olson's objection, Midland requested that the case be transferred to Calvert County, where Olson was living at the time. *Id.* The court granted Midland's request, and the collection action was transferred to the District Court for Calvert County, where it remains pending.[3]

At some point in 2012, Olson "retained" The Law Offices of E. David

---

[3]    Since that time, Olson has apparently moved again, as his original complaint in this action reflects an address in Baltimore City.

Hoskins, LLC.  JA-26 at ¶ 79.  Olson alleges that by March 25, 2013, the Midland Parties knew that he was represented by counsel with respect to the "subject debt." JA-27 at ¶ 81.

Olson claims that in spite of the Midland Parties' purported knowledge that he was represented by counsel, MCM (Midland's account administrator) communicated directly with him on May 8, 2013, by sending him a "Privacy Notice." *Id.*  The Privacy Notice does not state that the communication was an attempt to collect a debt, but merely describes the types of personal and financial information the Midland Parties gather about debtors, their privacy practices relating to such information, and the use and disclosure of the debtor's nonpublic personal information.  *See* JA-43.  The Privacy Notice also lists a website, www.mcmprivacy.com, that consumers can visit for more information regarding MCM's privacy policies.  *Id.*  Olson does not allege that he visited the website. Shortly after receiving the Privacy Notice, Olson commenced this litigation.

On August 15, 2013, the Midland Parties and the Lyons Firm moved to dismiss Olson's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In support of their motions, they argued:

- Olson's FDCPA claims are based on conduct occurring more than one year before he filed this lawsuit, and are therefore time-barred.

- An alleged violation of a state procedural rule does not give rise to a claim under the FDCPA.

13291/0/01556493.DOCXv1                    5

- A purportedly deficient complaint does not mean that Midland lacked standing to sue and does not constitute a violation under the FDCPA.

- Olson's "scattershot litigation" theory does not state a claim under the FDCPA.

- The Midland Parties and the Lyons Firm did not make a "false representation" by not attaching a copy of Olson's agreement with the original creditor to the Debt Collection Complaint.

- Olson's allegation that the Debt Collection Complaint was filed without "meaningful" attorney involvement does not give rise to a claim under the FDCPA.

- Olson's conclusory allegations regarding the Midland Parties' and the Lyons Firm's "litigation tactics" do not state a claim under the FDCPA.

- MCM did not violate § 1692c(a)(2) of the FDCPA by sending the Privacy Notice.

- Olson fails to state a claim under § 1692f of the FDCPA.

- Olson fails to state claims under the MCDCA and MCPA.

On December 18, 2013, the Honorable Catherine C. Blake entered an Order granting the Midland Parties' and the Lyons Firm's motions and dismissing the Amended Complaint with prejudice. Judge Blake correctly determined that all but one of Olson's FDCPA claims are time-barred; that Olson failed to state a claim under § 1692c(a)(2) of the FDCPA because the Privacy Notice does not constitute a communication made "in connection with the collection of any debt;" and that Olson failed to state a claim under the MCDCA and MCPA because he did not

allege facts to support a plausible claim that the Midland Parties and the Lyons Firm attempted to enforce a right with knowledge that the right did not exist.

## SUMMARY OF THE ARGUMENT

Olson is an individual who breached his contractual obligations to Chase Bank USA, N.A. ("Chase Bank"), by failing to pay money legally owed to Chase Bank. His Chase Bank account was ultimately sold to Midland, who filed a collection action against Olson in connection with his unpaid account. Olson admits that he used the credit card, and he does not deny that he owes the debt at issue. JA-19 to JA-20 at ¶ 48. Instead he claims, "on information and belief," that he "does not owe the debt to Midland because Midland does not have legal recourse to collect the debt and misrepresented its standing in [the Debt Collection Complaint]." JA-20 at ¶ 50.

Olson's claims against the Midland Parties and the Lyons Firm relate to their filing of the Debt Collection Complaint on December 15, 2010. Olson does not dispute that he learned of the lawsuit the same month it was filed, and that he reached out to the Lyons Firm in 2011 to discuss the lawsuit. He acknowledges that his roommate was served with a copy of the complaint and summons in February 2012 (which is an acceptable method of service under the Maryland Rules), and that he requested a transfer of the lawsuit to a different county in April 2012. And yet, in spite of these concessions, Olson nevertheless waited until May

13291/0/01556493.DOCXv1                                7

20, 2013, long after the expiration of the FDCPA's one-year statute of limitations, to file this lawsuit. Because all but one of Olson's FDCPA claims are based on the state debt collection action—which he knew about more than a year before he filed this lawsuit—those FDCPA claims are time-barred.

According to Olson, MCM violated § 1692c(a)(2), which prohibits a debt collector from communicating with a debtor who is represented by an attorney if the communication is made "in connection with the collection of the debt," by sending him the Privacy Notice on May 8, 2013. Olson, ignoring the plain language of § 1692c(a)(2), argues that a debt collector may not send *any* communications to a debtor who has retained counsel, *regardless* of whether such communication is in connection with the collection of a debt. The Privacy Notice is nothing more than a form disclosure regarding the Midland Parties' collection and use of consumers' nonpublic information. It does not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form. Thus, it is not a communication "in connection with the collection of any debt," and is not a communication prohibited by the FDCPA.

The remaining state law claims also fail as a matter of law. Olson makes the conclusory allegation that the Midland Parties and the Lyons Firm filed the Debt Collection Complaint with knowledge that Midland did not have a right to collect the debt. According to Olson, the documentation filed by Midland was not

sufficient proof of the debt, as it was not "certified or otherwise properly authenticated evidence establishing ownership of the alleged debt." JA-29 at ¶89.a; JA-37 at ¶ 102. Olson alleges that Midland did not have "legal recourse to collect the debt" and therefore Midland "misrepresented its standing" (apparently by suggestion) in the debt collection lawsuit. JA-29 at ¶ 89.b.

As recognized by the district court, "Olson never alleges that Midland does not own the obligation, that Olson does not owe the debt, or that the debt is time-barred." JA-94 to JA-95. The mere fact that Midland's documentation filed in the state court may have been insufficient to warrant a judgment on affidavit "does not undermine Midland's right to seek repayment of a debt Midland reasonably believe it legally owns." JA-95. Accordingly, the district court properly dismissed Olson's state law claims.

Because the district court found that all but one of Olson's FDCPA claims are barred by limitations, it did not consider the other grounds for dismissing those claims set forth in the Midland Parties' and the Lyons Firm's respective motions to dismiss. As set forth more fully below, even if timely, the Amended Complaint does not contain sufficient allegations to state a claim under the FDCPA. This Court may affirm the district court's judgment on this alternative basis.

For all these reasons, this Court should affirm the judgment of the district court.

13291/0/01556493.DOCXv1                        9

# ARGUMENT

## I.      Debt Collection Law.

### A.      FDCPA.

The FDCPA "'safeguards consumers from abusive and deceptive debt collection practices by debt collectors.'" *Robinson v. TSYS Total Debt Mgmt., Inc.*, 447 F. Supp. 2d 502, 507 (D. Md. 2006) (quoting *Akalwadi v Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 500 (D. Md. 2004)). To establish a *prima facie* case under the FDCPA, "the plaintiff must prove that (1) the defendant was a debt collector, (2) the defendant's conduct in attempting to collect a debt was prohibited by the Act and (3) the debt was a consumer debt." *In re Creditrust Corp.*, 283 B.R. 826, 830 (Bankr. D. Md. 2002). The clear focus of the Act is on the *conduct* and *activity* of debt collection. The express statutory purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Here, the "practice" at issue is the filing of a lawsuit (and activities related thereto), which is an authorized method for collecting a debt. Unlike the abusive or deceptive tactics about which the Act is concerned, "the filing of a debt collection lawsuit does not have the natural consequence of harassing, abusing or

oppressing the debtor. *Any* attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system . . . cannot be said to be an abusive tactic under the FDCPA." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330-31 (6th Cir. 2006) (emphasis in original).

Olson alleges that the Midland Parties and the Lyons Firm, by commencing and maintaining the state debt collection action, violated the following sections of the FDCPA: (1) § 1692d, which prohibits a debt collector from engaging in conduct in connection with the collection of a debt that tends to harass, oppress, or abuse the consumer; (2) § 1692e, which prohibits a debt collector from using false, deceptive, or misleading representations in connection with the collection of any debt; and (3) § 1692f, which prohibits a debt collector from using "unfair or unconscionable means" to collect any debt. Olson also alleges that MCM violated § 1692c(a)(2), which prohibits a debt collector from communication with a consumer represented by an attorney "in connection with the collection of any debt," by sending him the May 8, 2013 Privacy Notice.

**B.    MCDCA.**

Similar to the FDCPA, the MCDCA provides protection against abusive and misleading debt collection practices where a person is collecting or attempting to collect a consumer debt. Specifically, "[t]he MCDCA protects consumers against certain threatening and underhanded methods used by debt collectors in attempting

to recover on delinquent accounts." *Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 594 (D. Md. 1999) (citing Md. Code Ann., Com. Law §§ 14-201 to 14-204).

The MCDCA identifies nine unlawful ways a debt collector may violate the statute in connection with collecting or attempting to collect a debt. *Id.* at § 14-202. Olson contends that the Midland Parties and the Lyons Firm violated § 14-202(8), which provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with the knowledge that the right does not exist." *Id.* "In order to succeed on such a claim, the express language of the MCDCA requires that Plaintiffs allege that Defendants acted with knowledge as to the *invalidity* of the debt." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 769 (D. Md. 2012), *aff'd*, *Lembach v. Bierman*, No. 12-1723, 2013 WL 2501752 (4th Cir. June 12, 2013) (emphasis in original).

## C.    MCPA.

The purpose of the MCPA is to protect Maryland consumers from deceptive consumer practices. Md. Code Ann., Com. Law §§ 13-102(a)(1), 13-103. An unfair or deceptive trade practice includes any violation under the MCDCA. *Id.* at § 13-301(14)(iii).

Olson's sole basis for a claim under the MCPA is a purported violation of the MCDCA. Accordingly, if Olson fails to state a claim under the MCDCA, then he

does not have a claim under the MCPA.

## II. The District Court Properly Granted The Midland Parties' And The Lyons Firm's Motions To Dismiss.

### A. The Amended Complaint fails to state a claim under the FDCPA.

#### 1. Olson's claims under the FDCPA are time-barred.

A claim under the FDCPA must be brought within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d).[4] *See also Akalwadi*, 336 F. Supp. 2d at 500-01. With the exception of Olson's claim based on § 1692c, Olson's FDCPA claims are based on the Midland Parties' and the Lyons Firm's alleged conduct in the state debt collection action. Specifically, Olson alleges that they violated the FDCPA by: (1) filing updated interest worksheets in the state collection action; and (2) commencing the state collection action.

"Ordinarily, the statute of limitations begins to run when the communication that violates the FDCPA is sent." *Lembach*, 2013 WL 2501752 at *3 (citing *Akalwadi*, 336 F. Supp. 2d at 501). The Fourth Circuit recently held that the discovery rule applies to claims under the FDCPA, and therefore the claim accrues when Plaintiff knew or should have known of the violation. *See id.*

---

[4] Section 1692k(d) provides that "[a]n action to enforce liability . . . may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs."

13

Olson filed this litigation in the Circuit Court for Baltimore City, Maryland on May 20, 2013. Olson argues that the FDCPA limitations began to accrue no earlier than August 22, 2012, when he waived service of the Debt Collection Complaint, and therefore, his lawsuit was timely commenced. The district court rejected that argument, however, and concluded that much of the complained of conduct, and Olson's knowledge of that conduct, occurred well before May 20, 2012 (one year before Olson filed suit). JA-86.

### i.    Filing of interest worksheets

Olson argues that the Midland Parties and the Lyons Firm violated the FDCPA by filing updated interest worksheets in the state debt collection action on March 28, 2011 (JA-24 at ¶ 67), November 21, 2011 (*id.* at ¶ 69), and March 19, 2012. JA-25 at ¶ 72. Specifically, Olson claims that the Midland Parties and the Lyons Firm, by filing the updated interest worksheets, sought to "harass him and coerce settlement" in violation of §§ 1692d, 1692e, 1692e(10), and 1692f of the FDCPA. *See* JA-30 at ¶ 89.e; JA-34 at ¶ 93.f; JA-35 at ¶ 94.f.

The district court correctly determined that Olson's FDCPA claims—to the extent they were based on the filing of updated interest worksheets in the state court—are time-barred. JA-86 to JA-87. The court reasoned that the last interest worksheet at issue was filed on March 19, 2012, which is outside of the one-year limitations period. JA-87. In his Opening Brief, Olson does not specifically

address the district court's decision regarding the interest worksheets; rather, he argues that limitations did not begin to run for any of his FDCPA claims until August 22, 2012 (the date he claims he waived service of the Debt Collection Complaint). As discussed more fully below in Section III.A.1.ii, the limitations period governing Olson's FDCPA claims began to run no later than May 20, 2012. Because the last interest worksheet was filed on March 19, 2012, the district court determined, correctly, that Olson's FDCPA claims arising out of the interest worksheets are time-barred.

### ii.    Commencement of state debt collection action

Olson alleges that the Midland Parties and the Lyons Firm committed numerous FDCPA violations simply by filing the Debt Collection Complaint. The district court correctly determined that those FDCPA claims are time-barred. JA-87. In its analysis, the district court noted that "courts vary as to whether an FDCPA violation based on the filing of a lawsuit occurs at the time of filing or upon service." *Id.* (collecting cases). While this Court has yet to specifically address this issue, some district courts in the Fourth Circuit have concluded that either date may apply for limitations purposes. *See Winemiller v. Worldwide Asset Purchasing, LLC*, No. 09-2487-RDB, 2011 WL 1457749 at *3 (D. Md. Apr. 15, 2011) (collecting cases). Here, Olson's claims arising from the filing of the Debt Collection Complaint are time-barred regardless of whether the statute of

limitations is measured from the time of filing or upon service, because *both* occurred more than one year before he filed suit.

The Debt Collection Complaint was filed in St. Mary's County on December 15, 2010, at which time Olson resided in St. Mary's County. JA-23 at ¶ 63. The court correctly noted that "it appears Olson had notice of the suit, and filings made in the suit, prior to May 20, 2012, as he admits he found out about it in December 2010, he states he filed a request to transfer venue in April 2012, and he makes allegations that he was 'harassed' by Midland's filing of updated interest worksheets on March 28, 2011, November 21, 2011, and March 19, 2012." JA-89. *See also* JA-23 to JA-25 at ¶¶ 63-67, 69-70, 72. The district court further found that, "[t]here is nothing to suggest, and Olson does not claim, that service effected by leaving the papers with Olson's roommate at the Baltimore City address was improper." JA-89. *See* Md. Rule 3-121(a) (providing that serving an individual by leaving a copy of the summons, complaint, and all other papers at the individual's dwelling with a resident of suitable age and discretion is a proper form of service for lawsuits filed in the state district court of Maryland).

Olson does not dispute that he resided at the Baltimore City address on February 17, 2012, nor does he dispute that the individual who accepted service was a co-resident. It is therefore undisputed that Olson was served with the Debt Collection Complaint, in accordance with Md. Rule 3-121(a), on February 17,

2012, yet he waited until May 20, 2013 to file this lawsuit. *See* JA-76. Accordingly, the district court properly concluded, "[t]he facts alleged do not make it plausible that Olson had not been served or did not have proper notice of the lawsuit and its contents until or after May 20, 2012." JA-89.

Olson offers a host of implausible arguments in an effort to couch his claims as timely. None of these arguments are valid, and none even come remotely close to the district court's core finding that Olson clearly had notice of the lawsuit long before May 20, 2012. First, Olson argues that substituted service on his roommate "did not trigger the jurisdiction of the District Court of Maryland for Saint Mary's County because the lawsuit was filed in the wrong venue." Olson's Opening Brief ("Br.") at 18 (citing Md. Code Ann., Cts & Jud. Proc. § 6-201(a) (". . . a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation.")). Olson's argument is without merit, as "the legal sufficiency of the forum selected is determined at the time of filing" of the lawsuit. *Nodeen v. Sigurdsson*, 408 Md. 167, 178 (2009). Olson admits that at the time the lawsuit was filed, he resided in St. Mary's County, thus rendering his own argument factually implausible. *See* JA-23 at ¶ 63.

Olson next argues that "Midland and MCM and Lyons have repeatedly had the case transferred from one county to another as part of their collection activies" and that "[e]ach time the case was transferred, it effectively began anew with a new

summons being issued that needed to be served on Mr. Olson to establish jurisdiction." Br. at 19.[5] It is undisputed, however, that *Olson* was the one who requested that the case be transferred from St. Mary's County to Baltimore City. The Midland Parties merely consented to his request. JA-25 at ¶ 73. It was not until August 22, 2012 (*i.e.*, the date that Olson admits he waived any argument regarding improper service) that the Midland Parties requested that the case be transferred from Baltimore City to Calvert County, where Olson alleged he moved for work. *Id.* at ¶¶ 74-75.

Finally, Olson attempts to avoid the FDCPA's statute of limitations by urging this Court to adopt and apply the "continuing violation" theory to his FDCPA claims. According to Olson, the statute of limitations should be tolled

---

[5]     In his Amended Complaint, Olson alleges that the Midland Parties and the Lyons Firm violated §§ 1692d, 1692e and 1692f of the FDCPA "by refusing to serve [Olson] and avoiding trial when [Olson] appeared and was ready to proceed to trial on August 22, 2012, opting instead to harass him and coerce settlement by sending him interest worksheets with ever increasing amounts of prejudgment interest." JA-30 at ¶ 89.e; JA-35 at ¶ 94.f; JA-36 at ¶ 96. Significantly, Olson does not allege that the requested prejudgment interest was prohibited under Olson's agreement with Chase Bank or otherwise prohibited under Maryland law. As correctly recognized by the district court, Olson fails to articulate how such conduct could possibly violate the FDCPA. JA-87, n.1. Olson does not allege any facts as to why seeking one postponement of a trial date, a request that was reviewed and granted by the trial judge, amounts to harassing (§ 1692d), deceptive (§ 1692e) or unfair and unconscionable (§ 1692f) conduct in violation of the FDCPA. Accordingly, even if the above-described "litigation tactics" are not time barred, such conduct does not give rise to a claim under the FDCPA.

because the Midland Parties and the Lyons Firm "engaged in a continuing course of conduct, including several, repeated violations of the FDCPA, some of which fall within the one-year limitations period." Br. at 21.

The district court properly rejected Olson's "continuing violation" argument, reasoning:

> This is not a case in which a plaintiff alleges the debt collector engaged in repeated conduct, some of which occurred within the limitations period and some outside the period, as occurred in the case on which Olson relies. *See Tucker v. Mann Bracken, LLC*, 2009 WL 151669, at *3-4 (M.D. Penn. 2009) (finding repeated phone calls, only some of which were within the limitations period, constituted a continuing violation). Instead, Olson's claims grow out of the actual filing of the lawsuit and the contents of the filing, a discrete occurrence, limited in time. The mere existence of an ongoing collection suit does not constitute a continuing violation. *See Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012) (finding the placement of a lien on the plaintiff's property was a definitive action and its continuing existence did not constitute a continuing violation of the FDCPA); *Martin v. Sessoms & Rogers, P.A.*, 2010 WL 3200015, at *3 (E.D.N.C. 2010) ("The course of debt-collection litigation, without more, is not a 'continuing violation' of the FDCPA.").

JA-89 to JA-90 (footnote omitted).

Here, in his request that this Court reverse the district court's well-founded determination, Olson wholly ignores the district court's reasoning, and offers no basis for this Court to reach a different conclusion. Instead, he simply repeats his contention that this case is like *Tucker v. Mann Bracken, LLC*, No. 08-1677, 2009 WL 151669 (M.D. Pa. 2009), and thus demands the same result. Olson's reliance

on *Tucker* is misguided.

In *Tucker*, the conduct at issue involved repeated phone calls, as opposed to the commencement of a debt collection action. While the court concluded that the continuing violation theory applied to *that specific conduct*, it also recognized that other courts have *declined* to apply the continuing violation theory when the conduct at issue involves the commencement of a debt collection action. *See Tucker*, 2009 WL 151669 at *4 ("Defendant is correct that FDCPA claims arising from the commencement of a collection action occur when the action is filed. However, the allegations before the court in this matter do not concern FDCPA claims arising from the commencement of a collection lawsuit. Here, Plaintiffs have alleged FDCPA claims based on a series of phone calls. Defendant has cited no binding case law importing the limitations rules for collection lawsuits into claims for continuing violations arising from telephone calls.") (internal citations omitted).

Unlike in *Tucker*, the conduct at issue in this case relates to the commencement of a lawsuit. Such conduct is a "discrete occurrence, limited in time," to which the continuing violation theory does not apply. *See* JA-89. Olson offers no authority supporting the application of the continuing violation theory to the factual circumstances present here, and indeed, there is ample jurisprudence *rejecting* such an extension of this theory. It is well-established that "maintaining a

lawsuit or the course of litigations is not, in itself, a continuing violation of the FDCPA." *Bihn v. Fifth Third Mortg. Co.*, No. 13-00057, 2013 WL 5657598, at *4 (S.D. Ohio Oct. 16, 2013); *see also Schaffhauser v. Citibank (S.D.), N.A.*, No. 08-2275, 2009 WL 2400254, at *2 (3d Cir. 2009) (noting that plaintiffs failed to cite to any authority to support their contention that "participation in ongoing debt collection litigation qualifies as a 'continuing violation' of the FDCPA"); *Fontell v. Hasset*, 870 F. Supp. 2d 395, 404 (D. Md. 2012) (placement of a lien on the plaintiff's property was a definitive action and its continuing existence did not constitute a continuing violation of the FDCPA); *Simard v. LVNV Funding, LLC*, No. 10-11009, 2011 WL 4543956, at *5 (D. Mass. Sept. 28, 2011) ("[C]ommunications considered to be part of the course of litigation are not viewed as separate or 'continuing violations' of the FDCPA and therefore do not trigger a new accrual date for the statute of limitations.") (collective cases"); *Martin v. Sessoms & Rogers, P.A.*, No. 09-480, 2010 WL 3200015, at *3 (E.D.N.C. Aug. 12, 2010) ("The course of debt-collection litigation, without more, is not a 'continuing violation of the FDCPA."). *See also Bey v. Shapiro Brown & Alt, LLP*, No. 13-1562-PWG, 2014 WL 661586, at *5 (D. Md. Feb. 20, 2014) (holding that "the FDCPA statute of limitations is not reset by each communication where (1) the subsequent communications are continued efforts to collect the same debt and (2) the validity of the debt itself is not challenged, especially when bad faith is not

alleged") (internal citation omitted).

Accordingly, the district court appropriately declined to extend the continuing violation theory to apply to discrete occurrences such as the filing of the Debt Collection Complaint. Olson articulates no basis for this Court to conclude otherwise.

### 2.    MCM did not violate § 1692c(a)(2) of the FDCPA when it sent Olson the Privacy Notice.

Olson alleges that MCM violated § 1692c(a)(2) of the FDCPA, which prohibits a debt collector from communicating[6] with a consumer "in connection with the collection of any debt" "if the debt collector knows the consumer is represented by an attorney with respect to such debt." *Id.* According to Olson, MCM's May 8, 2013 Privacy Notice constitutes a communication in connection with the collection of his debt, and thus by "communicating" with him while he was represented by counsel, MCM violated § 1692c(a)(2) of the FDCPA.

The district court appropriately rejected Olson's contention, determining that the Privacy Notice was not made "in connection with the collection of any debt" under § 1692c(a)(2). JA-91. In making this determination, the district court applied the three-factor test used by the Seventh Circuit in *Gburek v. Litton Loan*

---

[6]    The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a.

*Servicing, LP*, 614 F.3d 380 (7th Cir. 2010).  Under *Gburek*, courts consider the following factors to determine whether a communication is made "in connection with the collection of any debt": (1) whether the communication included a demand for payment or had the animating purpose to induce payment; (2) the relationship between the parties; and (3) the purpose and context of the communication.  614 F.3d at 385.

Although the Fourth Circuit has not yet interpreted the meaning of the phrase "in connection with the collection of any debt," other courts that have addressed this issue (including district courts within the Fourth Circuit) have followed the *Gburek* test.[7]  *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d

---

[7]    Olson urges this Court to reject the *Gbruek* test and instead adopt a "bright line" rule that any communication by a debt collector to a debtor is a "communication in connection with the collection of any debt" under the FDCPA. *See* Br. at 27-28. Such a "bright line" rule ignores the statutory requirement that, to be liable under § 1692c(a)(2), the communication must be "in connection with the collection" of the debt.   Moreover, "courts have routinely held that communications that are merely informational and do not demand payment cannot be considered communications 'in connection with the collection of any debt' under the FDCPA." *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 372 (D. Conn. 2012) (collecting cases). *See also Estep v. Naley Deas Kochalski,* LLC, No. 13-3635, 2014 WL 185391, at *6 (6th Cir. Jan. 16, 2014) (holding that a communication informing consumers of requirements for continued occupancy of property upon transfer of title to the Department of Housing and Urban Development was not a communication made "in connection with the collection of any debt"). Olson's contention, therefore, that "Congress was clear that when a consumer is represented by an attorney, the debt collector is to stop communicating with the consumer in any manner" (Br. at 28) is simply incorrect.

169, 173 (6th Cir. 2011); *see also Powell v. Palisades Acquisition XVI, LLC*, No. 13-0219-RDB, 2014 WL 334814, at \*5 (D. Md. Jan. 29, 2014); *Nash v. Green Tree Servicing, LLC*, No. 12-278, 2013 WL 1867357, at \*11 (E.D. Va. May 2, 2013).

The district court noted that although the relationship between Midland and Olson militates in favor of finding the Privacy Notice to be a communication in connection with a debt, the other two factors do not. JA-91. Specifically, the court observed that the Notice did not reference Olson's debt or Midland's debt collecting activities; it was not sent with any other communication that referenced his debt; and it did not contain any warning that the communication was from a debt collector or was an attempt to collect a debt. *See* JA-43.

Olson's references to *Hernandez v. Midland Credit Management, Inc.*, No. 04-7844, 2006 WL 695451 (N.D. Ill. Mar. 14, 2006) and *Stricklin v. Jefferson Capital Systems, LLC*, No. 11-201, 2011 WL 5325735 (S.D. Ill. Nov. 3, 2011) do not lend support to his argument that the Privacy Notice is a communication sent in connection with the collection of a debt, as those cases are inapposite. In *Hernandez*, the privacy notice was sent *along with the initial collection letter* (2006 WL 695451 at \*7), and in *Stricklin*, the privacy notice contained statements such as "[y]ou have the right to ask us to stop communicating with you about this debt" and "this communication is from a debt collector." 2011 WL 5325735 at \*7.

13291/0/01556493.DOCXv1                   24

Here, MCM's Privacy Notice was not sent with any communication referencing Olson's debt nor did it contain statements indicating that it was from a debt collector.

Olson tries to distort the plain language in the Privacy Notice, arguing that the notice was a "subtle threat" that MCM may share his private, personal information with third parties. Br. at 32. That argument is belied by the plain language of the document itself. The Privacy Notice merely recites the Midland Parties' policies and practices with regard to the collection and utilization of their consumers' personal information, as required by the Gramm-Leach Bliley Act, 15 U.S.C. §§ 6801, *et seq.*[8] *See* JA-43. It states, in no uncertain terms, that the Midland Parties "do not use Customer Information we have obtained about you for any purpose other than to service or manage your account(s) in the ordinary course of our business." *Id.* Examples of third parties that may require the information in the ordinary course of the Midland Parties' business include "companies to whom [the Midland Parties] assign [the] account for servicing"; "companies that provide mailing services to [the Midland Parties]; and "service providers that help [the Midland Parties] administer [their] database containing [the] account." *Id.* Olson's

---

[8]     *See* 15 U.S.C. § 6803(a) (providing that financial institutions shall disclose to each consumer the institution's policies and practices with respect to, among other things, "disclosing nonpublic personal information to affiliates and nonaffiliated third parties . . . including the categories of information that may be disclosed" and "protecting the nonpublic personal information of consumers").

claim that the Privacy Notice contains a "subtle threat" is simply not borne out by the Notice itself, and therefore his claim lacks the requisite plausibility necessary to defeat the Midland Parties' and the Lyons Firm's Rule 12 motions.

Olson also focuses on the fact that the Privacy Notice states that "For more information visit us online at: www.mcmprivacy.com." *Id.* Olson emphasizes that the website – not the Notice, but the website – provides that consumers may call MCM with any questions, provides a link to allow debtors to make a payment online, and contains a disclosure that reads: "Please understand that this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." JA-27 at ¶ 81. On this basis, Olson makes the transitive argument that because the Privacy Notice references MCM's website, and because that website discusses payment and notes that it is a communication from a debt collector, the Privacy Notice constitutes a communication made in connection with the collection of a debt. Br. at 34.

As the district court recognized, the mere presence of the webpage link does not transform the Privacy Notice into a "communication made in connection with the collection of any debt." JA-93. The Privacy Notice does not indicate that visiting the website is related to paying off Olson's debt, but instead simply directs readers to MCM's website to obtain more information regarding the privacy policy. Moreover, the webpage does not contain a demand for payment, nor does it

attempt to induce payment on Olson's debt. At most, the website contains what can best be described as a prophylactic disclaimer that MCM is a debt collector.

The mere inclusion of a disclaimer on the webpage, stating that the webpage is a communication from a debt collector and is an attempt to collect a debt, is not enough to transform the webpage into a prohibited communication – particularly when there is nothing on the webpage indicating that it is a demand for payment or an attempt to induce payment from Olson. Although the webpage contains a link to "Make a Payment", that link did not *demand* payment, it did not refer to any delinquent debt, and it did not give any indication that Olson had past due payments. *See Nash*, 2013 WL 1867357 at \*13 (holding that letters from a debtor's account representative, even though they directed the debtor to a telephone number and website where the debtor could review her account information, did not constitute a communication in connection with a debt because the letters did not demand payment, list an amount owed under the debt, or contain the warning "This is an attempt to collect a debt.").

For these reasons, this Court should affirm the district court's judgment dismissing Olson's § 1692c(a)(2) claim.

## B.    The Amended Complaint fails to state a claim under the MCDCA.

Olson alleges that the Midland Parties and the Lyons Firm violated § 14-

202(8) of the MCDCA by:[9]

- filing the Debt Collection Complaint "without certified or otherwise properly authenticated evidence establishing ownership of the alleged debt in violation of Maryland law" (JA-37 at ¶ 102);[10]

- "knowingly filing a lawsuit when Midland does not have legal recourse to collect the debt and misrepresented its standing in the complaint" (*id.* at ¶ 103);[11] and

- using a "scattershot litigation strategy designed to deceive consumers into accepting default judgments or to coerce consumers into settlement when a consumer represented by an attorney would typically win" (JA-38 at ¶ 104).[12]

---

[9]     The Amended Complaint also alleges that the Midland Parties and the Lyons Firm violated the MCDCA by "knowingly claiming that the sale to Midland was subject to representation or warranty as to the collectibility as stated in the Agreement when in fact no representations or warranties existed." JA-38 at ¶ 105. Olson apparently concedes that the district court correctly determined that such an allegation does not give rise to a claim under the MCDCA because he does not challenge that determination in his brief.

[10]     Olson also relies on this allegation in his Amended Complaint to support his FDCPA claims.   *See* JA-29 at ¶ 89.a; JA-30 at ¶ 90.a; JA-31 at ¶ 91.a; JA-32 at ¶ 92.a; JA-33 at ¶ 93.a; JA-34 at ¶ 94.a; JA-35 at ¶ 95.a.  The Midland Parties and the Lyons Firm argued below that such claims fail to state a claim under Rule 12(b)(6).  This Court may affirm the district court's judgment dismissing those claims on either limitations grounds or on the alternative grounds set forth in the parties' dispositive motions. *See* Section III.A. *infra.*

[11]     Olson also relies on this allegation in his Amended Complaint to support his FDCPA claims.  *See* JA-29 at ¶ 89.b; JA-30 at ¶ 90.b; JA-31 at ¶ 91.b; JA-32 at ¶ 92.b; JA-33 at ¶ 93.b; JA-34 at ¶ 94.c; JA-3d at ¶ 95.b.  This Court may affirm the district court's judgment dismissing those claims on either limitations grounds or on the alternative grounds set forth in the parties' dispositive motions.

[12]     Olson also relies on this allegation in his Amended Complaint to support his FDCPA claims.   *See* JA-29 at ¶ 89.c; JA-30 at ¶ 90.c; JA-31 at ¶ 91.c; JA-32 at ¶

Section 14-202(8) provides that "[i]n collecting or attempting to collect an alleged debt a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." "This has been held to mean that a party may not attempt to enforce a right with actual knowledge or reckless disregard as to the falsity of the existence of the right." *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004) (citing *Spencer*, 81 F. Supp. 2d at 594-95).

Olson does not allege, nor could he, that the Midland Parties did not own his account that was once held by Chase Bank. Instead, Olson argues that the Debt Collection Complaint and the attached Bill of Sale contain "insufficient proof of ownership." JA-20 at ¶¶ 51, 52. Similarly, Olson fails to allege that he does not owe the debt at issue or that he satisfied the debt. Rather, Olson alleges that he does not owe the debt because Midland purportedly cannot *prove* he owes the debt. *Id.* at ¶ 50. Because Midland ultimately would be unable to prove its case against him (according to Olson), Olson alleges that Midland misled him into thinking it had "standing" to sue him. As a result, Olson alleges that Midland knowingly filed

---

92.c; JA-33 at ¶ 93.c; JA-34 at ¶ 94.d; JA-35 at ¶ 95.c. The Midland Parties and the Lyons Firm argued below that such claims fail to state a claim under Rule 12(b)(6). This Court may affirm the district court's judgment dismissing those claims on either limitations grounds or on the alternative grounds set forth in the parties' dispositive motions. *See* Section III.B. *infra.*

a lawsuit without legal recourse in violation of the MCDCA.

Significantly, Olson does not allege that the Debt Collection Complaint or Bill of Sale contained any false statements. Olson alleges that when Midland filed the Debt Collection Complaint, it did not attach legally sufficient proof of its right to collect the debt. Such an allegation, however, is devoid of any facts to support a claim that Midland had knowledge that it did not have the right to file the underlying lawsuit in violation of the MCDCA.

Additionally, Olson has a fundamental misunderstanding of the legal concept of standing. Under Maryland law, the court's "focus in deciding whether a litigant has standing to sue is 'on the party seeking to get his complaint before the court and not on the issues he wishes to have adjudicated.'" *Suessman v. Lamone*, 383 Md. 697, 712 (2004) (quoting *Pollokoff v. Maryland Nat'l Bank*, 288 Md. 485, 497 (1980)). As the owner of the debts Olson did not pay, Midland indisputably had standing to file the lawsuit against him. Whether Midland will ultimately prevail at trial is separate and distinct from its standing to bring a claim. Again, this allegation does not set forth any facts that the right to file the Debt Collection Complaint did not exist *and* that Midland had such knowledge.

In an effort to distract this Court from the inherent weaknesses in his own case, Olson focuses on Midland's alleged conduct in *other* litigation.[13] According to Olson, Midland "engages in a pattern and practice of abusive, scattershot litigation to collect debts by filing thousands of lawsuits without first conducting a proper investigation into whether a legal basis exists for pursuing a claim and without ever obtaining, or intending to obtain, admissible evidence of the existence or amount of such debt." Br. at 36. Such an allegation is not only inaccurate, but is insufficient to state a legally plausible claim under state or federal law.

Olson's MCDCA claim must be based on the Midland Parties' and the Lyons Firm's conduct towards *Olson*.[14] Unable to make any such allegations, Olson

---

[13]    For example, Olson notes that Midland entered into a consent judgment with the State of Minnesota in December 2012 in a lawsuit based on allegations regarding Midland's business practices. Br. at 39. Olson recites certain allegations made by the State of Minnesota in that case and stresses that the Midland Parties and the Lyons Firm "do not contest these factual assertions in their Motion to Dismiss." *Id.* The Midland Parties did contest those allegations in their reply in support of their motion to dismiss (*see* Doc. No. 17 at 2, n.1) and, in any event, such allegations are not relevant to whether Olson's amended complaint states a claim under the MCDCA. *See Richardson v. Midland Funding, LLC*, No. CCB, 13-1356, 2013 WL 6719110, *6 (D. Md. Dec. 18, 2013).

[14]    As evidenced by the case law relied upon by Olson, the lack of such allegations in the Amended Complaint is fatal to the application of his "scattershot litigation" theory, even if this Court were to determine such a theory was valid. *See* Br. at 39. For example, in *Mello v. Great Seneca Financial Corp.*, 526 F. Supp. 2d 1020 (C.D. Cal. 2007), the state debt collection action was barred by limitations. *Id.* at 1022. Moreover, in *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1296 (N.D. Ga. 2010) and *Kamps v. Midland Funding, LLC*,

instead asks this Court to reverse the lower court's appropriate dismissal of his claims based upon irrelevant and unsubstantiated conduct purportedly directed toward others outside of his own case, which is simply not a sufficient basis for reversal. Because the Amended Complaint fails to contain any factual allegations to support Olson's claims, this Court should affirm the district court's judgment.

### C.    The Amended Complaint fails to state a claim under the MCPA.

Olson's MCPA claim is based solely on his contention that the Midland Parties and the Lyons Firm violated the MCDCA. *See* Br. at 36 (noting that the MCPA prohibits "unfair or deceptive trade practices" and that such practices are "those that constitute any violation of the MCDCA"). Because Olson failed to plead a cause of action under the MCDCA, his claim under the MCPA fails as a matter of law.

---

No. 12-3799, 2013 WL 622505, at *1 (N.D. Ala. Feb. 19, 2013), the plaintiffs denied owing the debt at issue. The remaining cases relied on by Olson are inapposite because they are based on FDCPA claims. *See* Br. at 40. Unlike the FDCPA, for a debt collector to be liable under the MCDCA, the plaintiff must plead and prove that the debt collector disclosed information or threatened to enforce a right "with actual knowledge or reckless disregard as to the falsity of the information or the existence of the right." *Spencer*, 81 F. Supp. 2d at 595. There are no such allegations in the Amended Complaint.

## III. In The Alternative, This Court May Affirm The District Court's Judgment On Any Other Ground Supported By The Record.

Because the district court dismissed Olson's FDCPA claims as untimely, it did not reach the alternative grounds for dismissal in the Midland Parties' and the Lyons Firm's respective motions to dismiss. This Court may affirm the district court's judgment on any ground supported by the record. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). As demonstrated below, there are multiple grounds on which to affirm the judgment.

### A. An alleged violation of a state procedural rule does not give rise to a claim under the FDCPA.

Olson claims in his Amended Complaint that the Midland Parties and the Lyons Firm did not satisfy the requirements of Maryland Rule 3-306 and therefore "failed to provide certified or otherwise properly authenticated evidence and ownership." *See* JA-29 at ¶ 89.a; JA-30 at ¶ 90.a; JA-31 at ¶ 91.a; JA-32 at ¶ 92.a; JA-33 at ¶ 93.a; JA-34 at ¶ 94.a; JA-35 at ¶ 95.a. According to Olson, this alleged failure violated the FDCPA, specifically §§ 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), and 1692f(1). Olson is both factually and legally incorrect.

Olson alleges that the documents attached to the Debt Collection Complaint were not properly certified or authenticated as required by Rule 3-306(d). JA-22 at ¶ 56. Even if true (it is not) Olson's allegation that the Midland Parties and the Lyons Firm violated Rule 3-306 overlooks the fact that "'[t]he FDCPA was

designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of state debt collection law into a federal violation.'" *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 729 (D. Md. 2011) (quoting *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004)). *See also Hill v. Midland Funding, LLC*, No. 12-2397-CCB, 2013 WL 1645553, at *2 (D. Md. Apr. 16, 2013). A violation of a state law may be actionable under § 1692e(5) "*only if* the state law violation undermines the defendant debt collector's right to take the challenged action to such an extent that the filing of the suit was not legal." *Hill*, 2013 WL 165553, at *2 (emphasis added) (internal citation omitted).

Moreover, in 2010, Maryland Rule 3-306(a) (not subsection d) permitted a plaintiff such as Midland to attach an "original or a photocopy of the executed instrument, or a sworn or certified copy, unless the absence thereof is explained in the affidavit." Md. Rule 3-306(a) (2010).[15] Contrary to Olson's allegation that the documents attached to the Debt Collection Complaint were not properly certified or authenticated under Rule 3-306, the Midland Parties and the Lyons Firm

---

[15]    In 2010, Rule 3-306(d) addressed the notice requirements once a demand for judgment on an affidavit was granted. It was not until January 1, 2012 that the changes to the Rules pertaining to judgments on affidavit were effective and special provisions were set forth for those complaints and judgments on affidavits that arose out of an assigned consumer debt.

included, among other things, copies of the following documents with the affidavit: (1) a statement of the account summary; (2) the Bill of Sale between Chase Bank and Midland; (3) the Cardmember Agreement; and 4) an account statement from MCM. *See* JA-55 to JA-74. The Midland Parties and the Lyons Firm, therefore, complied with Rule 3-306(a) when they filed the Debt Collection Complaint in 2010.

Olson also claims in the Amended Complaint that the affidavit attached to the Debt Collection Complaint is "false", and as a result the Midland Parties had insufficient proof at the time they filed the complaint. JA-23 at ¶ 60. According to Olson, Ms. Bowman falsely claimed she had personal knowledge of Chase Bank's records. This contention is completely undercut by the plain language of Olson's Amended Complaint when he acknowledges that

> [t]he affidavit *did not assert* that Carina Bowman had personal knowledge about Chase Bank USA, N.A. or the debt. Rather, the only personal knowledge asserted was personal knowledge of the account records of Midland Credit Management . . . .

*Id.* at ¶ 53.a (emphasis added).

As acknowledged by Olson, Ms. Bowman's affidavit forthrightly limits her personal knowledge to the contents of Midland's account records. *See* JA-62. This truthful language is not a violation of the FDCPA. *See Clark v. Main Street Acquisition Corp.*, No. 12-408, 2013 WL 2295879, at *4 (S.D. Ohio May 24,

2013), *aff'd* No. 13-3763, 2014 WL 274469 (6th Cir. Jan. 27, 2014). *See also Richardson*, 2013 WL 6719110 at *5. The Amended Complaint is devoid of any factual support for Olson's contention that Ms. Bowman's affidavit is "false."

Olson also alleges that Ms. Bowman's affidavit and the accompanying documents failed "to present admissible evidence that (1) [he] was legally obligated to pay the alleged debt to Chase Bank USA, N.A.; (2) that the alleged debt had not been paid, and (3) the amount, if any, still owed on the alleged debt." JA-21 at ¶ 53.b. Such an allegation, even if true, is unavailing.

First, "[a] debt collector's mere failure to offer evidence sufficient to prove its claim at the time it files a complaint is not prohibited conduct under the FDCPA." *Richardson*, 2013 WL 6719110 at *4.

Second, Olson overlooks the fact that in 2010, Midland was not required to submit an affidavit or any other supporting documents in order to file a claim against him. It could, instead, simply file a complaint and present its proof at trial. *See* Md. Rule 3-306(b) (2012) (formerly Rule 3-306(a) (2010)) ("In an action for money damages a plaintiff *may* file a demand for judgment on affidavit at the time of filing the complaint commencing the action.") (emphasis added). *See also Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 850-51 (E.D. Mich. 2008). If Olson chose to file a notice of intention to defend and actually appeared at trial, the Midland Parties could have asked Olson, under oath, whether he had an account

with Chase Bank, had incurred a debt and whether he owed the debt.

In sum, the legal sufficiency of Ms. Bowman's affidavit is irrelevant for purposes of the FDCPA. Olson was required instead to point to factual misstatements made by Ms. Bowman in her affidavit yet he failed to do so. Accordingly, to the extent Olson's FDCPA claim is based on Ms. Bowman's affidavit, such claim was properly dismissed.

### B.    Olson's theory that Midland engaged in "scattershot litigation" is not a viable theory.

Olson asserts that debt buyers, such as Midland, "engage in a pattern and practice of abusive, scattershot litigation to collect debts by filing thousands of lawsuits without first conducting a proper investigation into whether a legal basis exists for pursuing a claim and without ever obtaining, or intending to obtain, admissible evidence of the existence or amount of such debt." JA-14 at ¶ 34. According to Olson, this scattershot litigation strategy violates §§ 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), and 1692f(1) of the FDCPA.

As previously noted, absent a false statement, the submission of legally insufficient, yet truthful, documents does not violate the FDCPA. *See Hill v. Midland, supra.* Moreover, allegations of a general pattern and practice of deception or misrepresentations alone do not give rise to a claim under the FDCPA. *Richardson*, 2013 WL 6719110 at *7. To state a claim under the

FDCPA, Olson must cite to misrepresentations or falsities within the Debt Collection Complaint or, at the very least, deny the underlying debt. *Id.* He has failed to meet this burden.

Other jurisdictions have similarly rejected Olson's theory regarding scattershot litigation, holding that absent a false statement contained in the documents, a plaintiff fails to state a claim under the FDCPA. *See Harvey*, 453 F.3d at 331-33. *See also Nickoloff v. Wolpoff & Abramson, LLP*, 511 F. Supp. 2d 1043, 1045 (C.D. Cal. 2007); *Deere v. Javitch, Block & Rathbone, LLP*, 413 F. Supp. 2d 886 (S.D. Ohio 2006); *Bandy v. Midland Funding, LLC*, No. 12-491, 2013 WL 210730, at *9 (S.D. Ala. Jan. 18, 2013); *Hickman v. Alpine Asset Mgmt. Group, LLC,* No. 11-1236, 2012 WL 4062694, at *5 (W.D. Mo. Sept. 14, 2012); *Alaan v. Asset Acceptance, LLC*, No. 10-328, 2011 WL 3475378, at *7 (S.D. Cal. Aug. 8, 2011).

This Court should likewise reject Olson's "scattershot litigation" theory and affirm the dismissal of his FDCPA claim.

**C.     The allegation that the Midland Parties or the Lyons Firm falsely represented that the sale of Olson's debt to Midland "was subject to representation or warranty as to collectibility" does not give rise to a claim under the FDCPA.**

Olson alleges that the Midland Parties and the Lyons Firm violated §§ 1692e, 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), and 1692f of the FDCPA

because the Bill of Sale between Chase Bank and Midland (which was attached as an exhibit to the Debt Collection Complaint) provides that Olson's account with Chase Bank was being sold "without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit." JA-23 at ¶ 59. Olson claims, "upon information and belief," that the agreement "specifies that no representations or warranties as to collectibility are being provided by the seller." *Id.* Because of such alleged language in the agreement, Olson argues that Midland, by attaching the Bill of Sale only to the Debt Collection Complaint, falsely represented that the sale of Olson's account was subject to a representation and warranty by Chase Bank as to collectibility. *See* JA-30 at ¶ 89.d; JA-31 at ¶ 90.d; JA-32 at ¶ 91.d; JA-33 at ¶¶ 92.d, 93.d; JA-35 at ¶ 94.e.

Olson's argument is nonsensical. The Bill of Sale expressly states that Chase Bank's right to payment from Olson was being sold to Midland "without recourse" except as otherwise stated in the underlying agreement between Chase Bank and Midland. Assuming, purely *arguendo*, that the underlying agreement provides that Chase Bank did not represent or warrant that Midland will be able to collect the debt from Olson does not mean that the language in the Bill of Sale is false. All it means is that the language in the Bill of Sale is not altered by the underlying agreement. *See Richardson*, 2013 WL 6719110 at *7.

Moreover, Olson fails to articulate how such language is material or would

otherwise mislead the least sophisticated consumer. *See Stewart*, 859 F. Supp. 2d at 764. Whether Chase Bank gave a warranty to Midland that Olson's debt would be collectible has nothing to do with whether Olson has an outstanding debt to Chase Bank, or the terms of that debt.

For these reasons, the allegation that the Bill of Sale falsely provides that Chase Bank represented and/or warranted that Midland would be able to collect Olson's debt does not give rise to a claim under the FDCPA.

> **D.    The allegation that the Midland Parties and the Lyons Firm filed the Debt Collection Complaint without any meaningful attorney involvement does not give rise to a claim under the FDCPA.**

Olson complains that the Midland Parties and the Lyons Firm violated § 1692e(10) of the FDCPA "by filing the action against Timothy Olson without meaningful attorney involvement" (JA-33 at ¶ 93.e) yet fails to articulate what level of involvement an attorney must have prior to filing an action to collect a debt on behalf of a client. As discussed above, it is well-established that a debt collector does not violate the FDCPA even when truthful documents submitted in a collection action are legally insufficient. Moreover, the failure to investigate a debt prior to filing a lawsuit does not constitute a violation of the FDCPA under § 1692d. *See Wallace v. Manley Deas Kochalski LLC*, No. 13-00031, 2013 WL 3338687, at *3 (W.D. Ky. July 2, 2013). Indeed, the Lyons Firm had no duty under the FDCPA generally, or under § 1692e specifically, to independently

13291/0/01556493.DOCXv1                    40

investigate the claim against Olson prior to filing the lawsuit. *See id.*

Again, Olson seems to demand what the FDCPA does not require, namely more of a "paper trail" by the lawyers filing the suit. *See Deere*, 413 F. Supp. 2d at 891. *See also Hickman*, 2012 WL 4062694 at *5; *Clark v. Unifund CCR Partners*, No. 07-266, 2007 WL 1258113, at *4 (W.D. Pa. Apr. 30, 2007).

Accordingly, Olson's conclusory allegation that the Midland Parties and the Lyons Firm filed the debt collection lawsuit without any meaningful attorney involvement fails to state a claim under the FDCPA. *See Richardson*, 2013 WL 6719110 at *8 (noting that the complaint failed to allege facts tending to show that an attorney did not review the case before Midland filed suit).

### E.    The Amended Complaint fails to state a claim under § 1692f of the FDCPA.

Olson's § 1692f claim is based on the same alleged conduct as his § 1692e claim. Section 1692f "'may provide a cause of action for conduct that is not specifically listed in that section or other provision of the FDCPA.'" *Stewart*, 859 F. Supp. 2d at 765 (quoting *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)). However, a plaintiff must allege conduct that is separate and distinct from any alleged § 1692e violations. *Id.* Because Olson has failed to allege any separate facts that contend the Midland Parties and the Lyons Firm engaged in unfair or unconscionable practices under § 1692f, the amended

complaint fails to state a claim under § 1692f of the FDCPA.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the United States District Court for the District of Maryland.

Dated: March 31, 2014                    Respectfully submitted,


   /s/   James P. Ulwick                     /s/   Ronald S. Canter  
James P. Ulwick                          Ronald S. Canter
Amy E. Askew                             Law Offices of Ronald S. Canter,
KRAMON & GRAHAM, P.A.                     LLC
One South Street, Suite 2600             200A Monroe Street, Suite 104
Baltimore, Maryland  21202               Rockville, Maryland  20850
Tel.: (410) 752-6030                     Tel: (301) 770-7490
julwick@kg-law.com                       rcanter@roncanterllc.com
aaskew@kg-law.com


Counsel for Appellees                    Counsel for Appellee
Midland Funding, LLC and                 Lyons Doughty & Veldhuis, P.C.
Midland Credit Management, Inc.

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Appellees respectfully suggest that oral argument is not necessary in this case. The legal issues are not novel, and oral argument would not aid the Court in reaching its decision.

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)

1.     This brief comports with the type-volume limitation of Fed. R. App. P. 32(a)(7), because this brief contains 10,619 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief comports with the typeface requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2007.


_____/s/_____
James P. Ulwick

Dated:  March 31, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2014, I caused the Brief of

Appellees Midland Funding, LLC, Midland Credit Management, Inc., and Lyons

Doughty & Veldhuis, P.C. to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> E. David Hoskins, Esq.
> Max F. Brauer, Esq.
> The Law Offices of E. David Hoskins, LLC
> 16 E. Lombard Street, Suite 400
> Baltimore, Maryland  21202
>
> Counsel for Appellant
> Timothy Olson
>
> Ronald S. Canter, Esq.
> Law Offices of Ronald S. Canter, LLC
> 200A Monroe Street, Suite 104
> Rockville, Maryland  20850
>
> Counsel for Appellee
> Lyons Doughty & Veldhuis, P.C.

I further certify that on this 31st day of March, 2014, I caused eight copies of

the Brief of Appellees Midland Funding, LLC, Midland Credit Management, Inc.,

and Lyons Doughty & Veldhuis, P.C. to be sent by Federal Express to the Clerk's

Office of the United States Court of Appeals for the Fourth Circuit.

> /s/
> James P. Ulwick

13291/0/01556493.DOCXv1                                45

# ADDENDUM[16]

## 15.U.S.C. § 1692d.  Harassment or Abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)    The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2)    The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3)    The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4)    The advertisement for sale of any debt to coerce payment of the debt.

(5)    Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6)    Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

---

[16]    The Addendum to Olson's Opening Brief sets forth the relevant portions of 15 U.S.C. §§ 1692a, 1692c, 1692g, and 1692k, as well as Md. Code, Com. Law §§ 13-101 and 14-201.  The Midland Parties and the Lyons Firm have provided the relevant portions of 15 U.S.C. §§ 1692d, 1692e, and 1692f, in the event this Court finds it necessary to consider the alternative arguments set forth in Section IV of the Response Brief.

## 15 U.S.C. § 1692e.  False or Misleading Representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*     *     *

    (2)    The false representation of--

        (A)    the character, amount or legal status of any debt[.]

*     *     *

    (4)    The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale or any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

    (5)    The threat to take any action that cannot be legally taken or that is not intended to be taken.

*     *     *

    (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## 15 U.S.C. § 1692f.  Unfair Practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

    (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.